# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| IN RE: FREDDIE LEE BROWN, § <br> § <br> FREDDIE LEE BROWN, § <br> § <br> *Appellant,* § <br> § <br> v. § <br> § <br> MARY K. VIEGELAHN, § <br> § <br> *Appellee.* § | Civil Action No. SA-18-CV-282-XR <br> Bkr. No. 17-52324-G |

## MEMORANDUM OPINION IN SUPPORT OF
## CERTIFICATION OF DIRECT APPEAL TO THE FIFTH CIRCUIT

Appellant Freddie Lee Brown appeals the Bankruptcy Court's order imposing certain conditions on his Chapter 13 Plan confirmation. The issue presented is whether, in confirming a Chapter 13 plan that complies with 11 U.S.C. § 1325 and pays 100% dividend to unsecured creditors, but in which the debtor chooses to retain some monthly disposable income over a five-year commitment period, the Bankruptcy Court may impose certain additional conditions on confirmation of the plan. Here, after giving the debtor a choice between paying all his disposable income into the plan until unsecured creditors were paid full or agreeing to limit any future modifications to those continuing to pay 100% dividend to unsecured creditors (the so-called *Molina* language), the debtor chose and the Bankruptcy Court implemented the *Molina* language condition. Brown seeks to have his proposed plan confirmed without either of the conditions required by the Bankruptcy Court because he asserts that they contravene the Bankruptcy Code. The Court finds that this issue is appropriate for certification for a direct appeal to the Fifth Circuit, and this Order explains why.

**Background**

Freddie Lee Brown filed a voluntary petition for relief under Chapter 13 on October 2, 2017. Chapter 13 provides bankruptcy protection to individuals with regular income and permits them to keep their property but agree to a court-approved plan under which they pay creditors out of their future income. *Hamilton v. Lanning*, 560 U.S. 505, 508 (2010). A bankruptcy trustee oversees the filing and execution of a Chapter 13 debtor's plan. *Id.* Section 1325 specifies circumstances under which a bankruptcy court "shall" and "may not" confirm a plan. *Id.* (citing 11 U.S.C. §§ 1325(a), (b)). If the plan satisfies § 1325(a), the bankruptcy court "shall" confirm the plan. But if an unsecured creditor or the bankruptcy trustee objects to confirmation, the bankruptcy court "may not" approve the plan unless it (1) pays unsecured creditors in full or (2) provides that all of the debtor's "projected disposable income" be paid to unsecured creditors. *Id.*

Brown proposed a Chapter 13 Plan that provided for a monthly payment of $1,080 over five years,[1] with full payment to priority, special class, and secured claims, and a total of no less than $7,728.18 to nonpriority unsecured creditors, such that unsecured creditors would receive approximately 100% of allowed claims (referred to as a 100% dividend to the general unsecured creditors). Bkr. docket no. 2.[2] Brown notes that the Chapter 13 Form Plan provides for payment of secured and priority claims before payment of non-priority unsecured claims, and that his proposed plan would provide for payment in full to the general unsecured creditors after payment of secured and priority claims.

---

[1] The applicable commitment period of the term of the Chapter 13 Plan cannot exceed five years. 11 U.S.C. § 1322(d)(1).

[2] The original proposed plan indicated that Plaintiff's monthly disposable income was $142.07. R1 at 76.

On November 21, 2017, the Trustee objected to confirmation on various grounds, including that the plan failed to include all of Brown's income and that it failed to satisfy the confirmation standards of § 1325. Bankr. docket no. 12. Brown filed Amended Schedules on December 5, 2017 and January 19, 2018. Bankr. docket nos. 14-15, 17.

On January 23, 2018, the Trustee filed a brief in support of her objections. She noted that per the amended schedules, Brown's monthly net income was $2,343, and thus he would have disposable income of $1,263 per month with the $1,080 proposed monthly payment plan. Bankr. docket no. 18 at 1. Because the Plan proposed a monthly payment of only $1,080, instead of the full amount of Brown's monthly disposable income, the Trustee asserted that the Plan did not represent the interests of all creditors because unsecured creditors, who would be paid last, would lose present value of the money and bear the risk of default should there be a future change in Brown's circumstances. *Id.* at 5. Because Brown could complete the payments to secured creditors more quickly with a higher monthly payment,[3] but chose not to, the Trustee argued that it would be unfair to unsecured creditors who would bear the risk of not being paid if Brown fails to complete the Plan due to future changed circumstances.

The Trustee did not request that Brown be made to pay in all his disposable income, but asserted that, in exchange for the lower payments and the resulting risk to the unsecured creditors, Brown should be required to agree to pay all unsecured claims in full in order to ultimately receive his discharge. *Id.* at 3. Thus, the Trustee requested that the following

---

[3] The amount of disposable income was ultimately determined to be about $1,111. But using the $1,263 number, the Trustee noted that the first payment to unsecured creditors would not occur until month 53 of the Plan, and those creditors bear the risk of modification or default for 53 months while receiving nothing, while the Debtor retains substantial discretionary income each month. The Trustee noted that if all disposable income were paid into the Plan, secured creditors would be paid within approximately 21 months, and general unsecured creditors would be paid in full within approximately 26 months.

condition – the so-called "*Molina* language" -- be included in the plan in order for Brown to ultimately receive a discharge:

> The Plan as currently proposed pays a 100% dividend to unsecured claims. The Debtor shall not seek modification of this Plan unless said modification also pays a 100% dividend to unsecured claims. Additionally, should this Plan ever fail to pay 100% dividend to unsecured claims, the Debtor will modify the Plan to continue paying a 100% dividend. If the Plan fails to pay all allowed claims in full, the Debtor will not receive a discharge in this case.

This language was previously approved in a decision by Judge Hudspeth in *Molina v. Langehennig*, No. SA-14-CA-926, 2015 WL 8494012 (W.D. Tex. Dec. 10, 2015). He noted that section 105(a) of the Bankruptcy Code – which permits the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Code, to enforce or implement court orders or rules, or to prevent an abuse of process -- authorizes the bankruptcy court to exercise its equitable powers, so long as they are exercised in a manner consistent with the Code. Judge Hudspeth found that the condition was not an abuse of discretion and that the debtors were granted their requested relief insofar as their plan was confirmed.

The Trustee argued that the bankruptcy reforms in BAPCA were to curb abuses and ensure that debtors repay creditors the maximum they can afford. Bankr. docket no. 18 at 5. She noted that, to ensure full payment, some courts have required the payment of interest. *Id*. at 6.[4] She further argued that, without being able to impose such conditions, the Trustee's obligation to protect the estate for all creditors would be meaningless. *Id.* at 8. She noted that discharge is not a fundamental right, and § 105 of the Bankruptcy Code grants bankruptcy courts discretion

---

[4] For example, the Trustee cited *In re Hight-Goodspeed*, 486 B.R. 462, 463-64 (Bankr. N.D. Ind. 2012) and *In re Braswell*, No. 13-60564-fra13, 2013 WL 3270752 (Bankr. D. Or. June 27, 2013). However, these cases rely on the express language of § 1325 for support, rather than on the equitable powers of § 105. They conclude that the introductory phrase "as of the effective date of the plan" imposes a present value requirement under § 1325.

to fashion such orders as are necessary to further the substantive provisions of the bankruptcy code. *Id.* at 8-9. The Trustee argued that the *Molina* condition would honor the debtor's choice to pay less per month while still receiving confirmation, while simultaneously protecting unsecured creditors without violating any express provisions of the bankruptcy code. *Id.* at 10-12.

The Bankruptcy Court held a confirmation hearing on February 13, 2018. R2 at 182. At the hearing, the evidence indicated that Brown's monthly net income was $2,191, based on the amended schedule J. R2 at 194-97. Thus, he retained $1,111 in disposable income each month.

Brown argued that restricting his ability to later move to modify contravened § 1329, which provides that "[a]t any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to," among other things, "(1) increase or reduce the amount of payments on claims to a particular class provided for by the plan, [or] (2) extend or reduce the time for such payments." 11 U.S.C. § 1329. Section 1329 allows a debtor to move to reduce payments in a plan if his financial conditions change for the worse or to increase payments if his financial condition improves or he wishes to complete his plan sooner, while also allowing the trustee or unsecured creditors to move to change the amount of payments.

Brown argued that the bankruptcy court should follow Judge Ezra's opinion in *Martinez*, in which Judge Ezra held that the *Molina* language contravened § 1329 because it restricted the statutory right to file a motion to modify a plan to decrease payments. R2 at 190. In *Martinez v. Viegelahn*, 581 B.R. 486 (W.D. Tex. 2017), Judge Ezra acknowledged that a bankruptcy court has discretion to impose some conditions on a plan, but held that the conditional *Molina*

5

language that a plan cannot be modified to change the applicable discharge rate contravenes § 1329(a)(1), requiring vacatur of the conditional language.

Brown argued that § 1325 gives the debtor the option to propose a plan that contributes less than all of his disposable income each month, so long as he pays 100% to unsecured creditors, which he had done, while retaining his right under §1329 to later modify the plan to pay less if his financial circumstances changed. Brown asserted that the *Molina* language improperly restricted his rights under § 1329, and further asserted that the proper procedure to address the Trustee's concerns was for the Bankruptcy Court to evaluate, at the time a motion to modify was later filed, whether it was filed in good faith, doing so in part by evaluating what the debtor has done with the disposable income, and to deny modification if the debtor did not use the disposable income for reasonable and necessary expenses. R2 at 199-203.

The Trustee argued that the plan did not violate § 1329 because Brown could still modify the plan, so long as the dividend to unsecured creditors remained 100%. R2 at 188. If circumstances were such that Brown could no longer pay the 100% dividend to unsecured creditors, then the bankruptcy could be dismissed and refiled virtually immediately. R2 at 204.

The Bankruptcy Court stated it would allow confirmation if the Debtor would agree to one of two court-imposed conditions: (1) the *Molina* language or (2) paying all disposable income during the first part of the plan until there was money set aside for payment in full to all unsecured creditors (about 7 months), and then modifying the plan to make lower payments to complete payments to the secured creditors. R2 at 225-29. The Bankruptcy Judge stated, "I understand your argument about 1329, that's why I'm giving you the difficult, admittedly choice. If you're concerned about preserving 1329, I'm going to balance it against paying the

unsecured claims." *Id.* at 229. The Bankruptcy Judge disagreed with Judge Ezra's opinion in *In re Martinez*, recognizing that he was not bound to follow it. R2 at 231. Brown agreed to the *Molina* language, but asserted that the Bankruptcy Court was forcing him to either relinquish a right under § 1325 or a right under § 1329.

The Bankruptcy Court entered the final confirmation order on March 12, 2018, including the *Molina* language (R1 at 153-54), and Brown timely appealed. Brown argues that the Bankruptcy Court lacked discretion to impose the *Molina* conditions on confirmation because the Plan fully satisfied the criteria set forth in § 1325, and the imposed conditions contravene express provisions of §§ 1325(b)(1)(A) and § 1329(a).

## Certification for Direct Appeal Analysis

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1). Thus, this Court may decide this appeal. However, this Court may also certify the Bankruptcy Court's order for direct appeal to the Fifth Circuit on its own motion pursuant to 28 U.S.C. § 158(d) if the criteria are met. *See Seaquest Diving, LP v. S&J Diving*, 579 F.3d 411, 416 (5th Cir. 2009) ("S&J appealed the order of the bankruptcy court, and the district court certified the bankruptcy court's order for direct appeal to the Fifth Circuit.").

Section 158(d)(2) provides for certification for direct review by the court of appeals of a bankruptcy court order when (i) the order involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court, or involves a matter of public concern; (ii) the order involves a question of law requiring resolution of conflicting decisions, or (iii) an immediate appeal would materially advance the bankruptcy case. 28 U.S.C. § 158(d)(2)(A). The district court may make the certification on its own motion,

and if it determines that the case involves an appropriate circumstance, shall make the certification. *Id.* § 158(d)(2)(B). "The twin purposes of [28 U.S.C. § 158(d)(2)] were to expedite appeals in significant cases and to generate binding appellate precedent in bankruptcy, whose caselaw has been plagued by indeterminacy." *In re Pacific Lumber Co.*, 584 F.3d 229, 241-42 (5th Cir. 2009).

In this case, both circumstances (i) and (ii) are present. There is no controlling precedent regarding whether the Bankruptcy Court may impose additional conditions, including specifically the *Molina* conditions, in connection with confirmation of a Chapter 13 plan that fully complies with § 1325. The Court also finds that this issue is important because it implicates whether the Bankruptcy Court may impose conditions as a matter of furthering policy (protecting unsecured creditors from risk) when the Bankruptcy Code presumably already speaks to that policy by allowing a debtor to choose to pay less than all of his disposable income each month, so long as unsecured creditors are paid in full. In addition, this is a recurring issue in the bankruptcy courts that requires resolution.

Further, the order involves a question of law requiring resolution of conflicting decisions. In 2015, Judge Hudspeth expressly approved imposition of the *Molina* language, although he did not consider whether it contravened § 1329, only whether it contravened § 1325. In 2016, Judge Gargotta noted in his opinion in *In re McCarthy*, 554 B.R. 388, 393 (Bankr. W.D. Tex. 2016) that courts and treatises differ on whether a court may impose additional conditions when confirming a plan that satisfies § 1325(b)(1). He agreed that a debtor has the option to choose to pay over a period of 60 months when there is excess disposable income to

pay unsecured claims sooner, but concluded that the *Molina* conditions did not contravene § 1325.

However, in 2017, Judge Ezra held that the *Molina* language was not permissible because it contravenes § 1329, addressing a confirmation plan issued by Bankruptcy Judge King. Judge Ezra vacated the portion of the confirmation order containing the *Molina* language and affirmed as modified, and the Trustee did not appeal. In this case, Judge Gargotta recognized that he is not bound to follow Judge Ezra's opinion, and imposed the *Molina* language, concluding that it does not contravene § 1329.

A decision by this Court would simply side with either Judge Ezra or Judge Gargotta. If this Court agrees with Judge Gargotta, Brown will appeal, and the appeal will end up in the Fifth Circuit anyway, just more delayed. If the Court follows Judge Ezra's approach, the Trustee may again decide not to appeal, as she did in *Martinez*, maintaining the *status quo* where the Bankruptcy Court may continue to impose the conditions, potentially forcing debtors to repeatedly appeal, possibly without ever reaching the Fifth Circuit if the district judges agree with Judge Ezra and the Trustee does not appeal. Without a decision from the Court of Appeals, this issue is certain to recur.

**Conclusion**

The Bankruptcy Court's Order will be certified for direct appeal to the Fifth Circuit pursuant to 28 U.S.C. § 158(d) and Bankruptcy Rule 8006.

Pursuant to Bankruptcy Rule 8006(e)(1), the Clerk must serve the Certification (issued separately), accompanied by this Memorandum Opinion in Support, on the parties to the appeal

9

in the manner required for service of a notice of appeal under Rule 8003(c)(1). The parties shall have 14 days to file a supplemental statement pursuant to Bankruptcy Rule 8006(e)(2).

A request for permission to take a direct appeal must be filed with the circuit clerk pursuant to Rule 8006(g).

The Clerk is directed to administratively close this case pending further order of the Court.

It is so ORDERED.

SIGNED this 22nd day of January, 2019.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE